UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Sheryl Lynn Stimpson,<br><br>Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 17-cv-0824 (HB)<br><br><br>**ORDER** |

Carol Louise Lewis, 14 North 7th Avenue, St. Cloud, MN 56303, for Plaintiff Sheryl Lynn Stimpson

Bahram Samie, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Defendant Nancy A. Berryhill

HILDY BOWBEER, United States Magistrate Judge[1]

Pursuant to 42 U.S.C. § 405(g), Plaintiff Sheryl Lynn Stimpson seeks judicial review of a final decision by the Acting Commissioner of Social Security denying her application for social security disability insurance (DIB) and supplemental security income (SSI).  The matter is now before the Court on the parties' cross-motions for summary judgment [Doc. Nos. 17, 19].  For the reasons set forth below, the plaintiff's motion is denied, the defendant's motion is granted, and the determination of the Social

---

[1] The parties have consented to have a United States Magistrate Judge conduct all proceedings in this case, including the entry of final judgment.

Security Administration is affirmed.

## I. Procedural Background

Stimpson applied for DIB and SSI benefits on May 17, 2013, alleging a disability that began on October 5, 2010. (R. 23.) Her applications were denied initially by the Social Security Administration on September 23, 2013, and were again denied after reconsideration on May 5, 2014. (*Id.*) Stimpson then submitted a written request on May 9, 2014 for a hearing to review the denial of her benefit claims. (*Id.*) An administrative law judge (ALJ) convened a hearing on September 29, 2015,[2] at which medical expert Karen Butler, Ph.D., and vocational expert L. David Russel testified. (*Id.*) Assessing Stimpson's claims under the five-step sequential evaluation procedure outlined in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ determined Stimpson was not disabled. (R. 26-44.)

At step one, the ALJ determined Stimpson had not engaged in substantial gainful activity since the alleged onset date of December 5, 2012. (R. 26.) At step two, the ALJ determined Stimpson had the following severe impairments: history of bilateral subdural hematomas; cervicalgia; anemia; alcoholic hepatitis; history of right knee gunshot wound injury with a single retained fragment; history of left knee gunshot wound injury with multiple retained bullet fragments, moderate degenerative joint disease, and mild genu valgus deformity; dementia and cognitive disorder, not otherwise specified; adjustment disorder; generalized anxiety disorder; and severe alcohol dependence. (R. 26.) The ALJ

---

[2] The hearing was initially scheduled to take place on June 9, 2015. (R. 23.) However, the ALJ postponed the hearing to allow him and the medical expert to review 262 pages of medical evidence that were submitted just prior to the start of the hearing. (*Id.*)

found at the third step, however, that no impairment or combination of impairments met or equaled the severity of an impairment listed in 20 C.F.R. Part 404, subpart P, appendix 1. (*Id.*) At step four, the ALJ determined Stimpson retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), subject to the following limitations: occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; occasional pushing or pulling with the left lower extremity; frequent reaching overhead bilaterally; limited to routine, simple and repetitive tasks; involving no more than occasional changes in routine work functions; involving goal oriented work but not at a fast production rate pace; operating in a low stress environment; requiring no more than brief and superficial contact with coworkers, the public, and supervisors; and not involving exposure to drugs or alcohol as part of the assigned job duties. (R. 31.) Based on these limitations, the ALJ concluded Stimpson could not meet the task requirements of her past jobs as an office clerk, receptionist, or order filler. (R. 42.) However, the ALJ concluded she could make a successful adjustment to work as a hand packager, cleaner, or produce sorter. (R. 43.) Therefore, because Stimpson was able to work in certain positions available in the American economy, the ALJ determined at step five that she is not disabled. (R. 43.)

Following the adverse decision, Stimpson requested the Appeals Council review the ALJ's decision denying her DIB and SSI applications. (R. 1.) With that request, she submitted a new psychological evaluation report by Paul Reitman, Ph.D., that had not been available at the time of the hearing before the ALJ. (R. 2.) After reviewing the

request, the Appeals Council found no reason under its rules to review the ALJ decision and denied Stimpson's request. (R. 1.) Stimpson then initiated this action for judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Stimpson argues the Appeals Council erred when it disregarded Dr. Reitman's report, and for that reason, the Commissioner's disability determination is not support by substantial evidence.

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties. The Court will recount the facts of record only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

## II. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Davidson v. Astrue*, 578 F.3d 838, 841 (8th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)), meaning that less than a preponderance of the evidence is needed to meet the standard. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). Thus, if it is possible to reach two inconsistent positions

from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB purposes, the claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The same standard applies to SSI claims. *See* 42 U.S.C. § 1382c(a)(3)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

In reviewing the Commissioner's denial of a disability claim, the Court assesses whether the disability determination is supported by substantial evidence at each step of the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. At the first step, the Commissioner determines if the claimant is working, *i.e.* "engaging in substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaging in substantial gainful activity, she is not disabled and the analysis ends there. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner assesses whether the claimant has a medically determinable impairment that is "severe," meaning it limits his ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment or set of impairments are not severe, the claimant is not disabled. *Id.* At step three, the

Commissioner determines whether the claimant's impairment qualifies as a "listed impairment," 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv), *i.e.* an impairment that *per se* qualifies a claimant for disability. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not listed, however, the ALJ then proceeds to assess the claimant's RFC based on "all the relevant medical and other evidence in [the] record." 20 C.F.R. §§ 404.1520(e), 416.920(e). At step four, the Commissioner considers the claimant's RFC and determines if the claimant is able to meet the demands of the job she held prior to the outset of the impairment. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is capable of working in his former job, the claimant is not disabled. *Id.*

Lastly, at step five, the Commissioner assesses whether the claimant is able to adjust to any other work, taking into account his RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is able to do other work, she is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). Unlike the previous steps where the claimant has the burden of proof, at this last step the Commissioner has the burden of proving the claimant is not disabled due to the availability of other work. 20 C.F.R. §§ 404.1512(b)(3), 416.912(b)(3). In particular, the ALJ must show that other work exists in significant numbers in the national economy that the claimant can do the work given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(b)(3), 416.912(b)(3).

### III.   Discussion

Stimpson argues the Appeals Council erred by rejecting the opinion of Dr. Reitman, which was submitted to the Appeals Council but had not been available to

the ALJ. (R. 2, 8, 44.) According to Stimpson, Dr. Reitman's opinion is a critical piece of information that should have been taken into account when deciding whether she was disabled. Because the Appeals Council failed to consider Dr. Reitman's opinion, Stimpson argues, the Commissioner's decisions at step three and step five are not supported by substantial evidence. Consequently, Stimpson argues the Court should remand the disability decision to the ALJ to fully account for Dr. Reitman's opinion.

### A.   Dr. Reitman's Opinion

On May 19, 2016, Dr. Reitman completed a psychological examination report in which he assessed Stimpson's mental health and gave his opinion regarding her ability to work. (R. 8.) As part of that examination, Dr. Reitman reviewed the psychological evaluation performed by Mark C. Bordewick, Ph.D., in November 2002, the chemical dependency assessment performed by Jon Holthusen in November 2002, the Rule 25 Assessment conducted by licensed alcohol and drug counselor Andrea Khalid in December 2013, the cognitive evaluation performed by Nancy Carlson, Psy.D., in October 2013, and the mental health assessments performed by Cheryl Lindberg, M.S., in January and July of 2014. (R. 8-12.) He also personally interviewed Stimpson and assessed her abilities using the Minnesota Multiphasic Personality Inventory 2 Test (MMPI-II) as well as the Wechsler Adult Intelligence Scale IV Test (WAIS-IV). (R. 12.)

In detailing the results of his interview, Dr. Reitman observed that Stimpson was inattentive, distractible, anxious, and depressed. (R. 13.) He reported Stimpson suffers from severe headaches and memory loss, has difficulty with concentration and reading,

has difficulty sleeping, and becomes exhausted during the day so has to take frequent naps. (*Id.*)  Stimpson reported to him that she had been sober for twelve months. (*Id.*) Dr. Reitman noted that Stimpson has her own apartment but she primarily lives at her mother's home and needs reminding to shower and brush her teeth. (*Id.*)  According to Dr. Reitman's report, Stimpson engages in fairly minimal daily activities and does not drive. (*Id.*)  However, Stimpson did indicate that she volunteers up to 2 ½ hours each week and sometimes goes to a fitness center. (*Id.*)  She also occasionally goes to Walmart with her friends, but Dr. Reitman indicated that she otherwise has very little socialization. (*Id.*)

     Dr. Reitman also detailed the MMPI-II test results in his report.  According to his analysis, the test results raised concerns that Stimpson was actually under-reporting her symptoms. (R. 13.)  Dr. Reitman additionally noted that the MMPI-II showed Stimpson suffered from head pain and neurological symptoms, and corroborated complaints regarding difficulty with memory and concentration. (*Id.*)  Dr. Reitman opined that the test results for emotional internalizing indicated that Stimpson suffered from feelings of helplessness, hopelessness, and self-doubt. (*Id.*)  On the positive side, Stimpson displayed no indications of disordered thinking or maladaptive externalizing. (*Id.*)

     Dr. Reitman additionally explained the findings of the WAIS-IV test in his report. In particular, Dr. Reitman noted that all of Stimpson's scores were below average and signaled impairments ranging from moderate to severe. (R. 13-14.)  In one measure of analytical reasoning, Stimson showed moderate to severe impairment. (R. 14.)  For attention and concentration, she showed mildly impaired ability. (*Id.*)  For language

skills, she show moderately impaired ability that was deteriorating. (*Id.*)  Her long-term memory and ability to understand and address every-day problems both registered as mildly impaired.  (*Id.*)  Test results also indicated she was losing intellectual capacity; her current estimated IQ of 90 is lower than it used to be.  (*Id.*)  Based on these results, Dr. Reitman opined that Stimpson was experiencing "cognitive decline secondary to neuropsychological conditions – her TBI, depression, and anxiety."  (*Id.*)  Further, Dr. Reitman asserted her declining mental ability cannot be primarily attributed to chemical dependency problems based on the test results and her reported sobriety. (*Id.*)

Dr. Reitman concluded his psychological examination report with the following diagnoses: dementia, cognitive disorder secondary to a traumatic brain injury, major depressive disorder, generalized anxiety disorder with panic attacks, and alcohol dependence in remission.  (R. 14.)  Based on his findings, Dr. Reitman also concluded that Stimpson was not capable of competitive full-time employment because of marked to severe difficulty with attention, concentration, and pace.  (*Id.*)

### B. Whether the Appeals Council's Alleged Error in Rejecting Dr. Reitman's Opinion Provides Cause for Remand

Stimpson asks the Court to remand the disability decision to the ALJ on the basis that the Appeals Council erred by not accounting for Dr. Reitman's opinion.  The following regulation was in effect on the date of the Appeals Council's decision:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date

9

> of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b) (1987) (amended 2017). Put simply, the regulation *requires* the Appeals Council to consider newly submitted evidence if it is new, material, and relates to the period on or before the date of the ALJ's decision. *Bergmann v. Apfel*, 207 F.3d 1065, 1069 (8th Cir. 2000). The Appeals Council's failure to fulfill its obligation to consider new and material evidence is legal error that may provide a basis for remand by a reviewing court. *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir.1990). Whether evidence is actually new, material, and related to the adjudicated period is a question of law the court reviews de novo. *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). Here, the Appeals Council denied review of Stimpson's disability claim and noted that it had "looked at" Dr. Reitman's opinion but rejected it on the basis that it did not relate to the adjudicated period. (R. 2.) Stimpson argues the Appeals Council erred in rejecting Dr. Reitman's opinion, because the opinion did relate to the adjudicated period. Specifically, Stimpson asserts the opinion was retrospective in nature and helped explain Stimpson's chronic mental health issues.

The Commissioner argues this Court lacks jurisdiction to review the Appeals Council's decision because it is not a final agency action. *See* 42 U.S.C. § 405(g). As support, the Commissioner points to *Mackey v. Shalala,* 47 F.3d 951 (8th Cir. 1995), a case where the Eighth Circuit determined that a court may not review an Appeals Council decision to deny review because it is not a final agency action. While the Commissioner is correct to point out that this Court lacks jurisdiction to review an Appeals Council's

10

decision to deny review, the instant case does not involve such a request. Stimpson is not challenging the Appeals Council's decision to decline to review the ALJ decision. Rather, Stimpson is challenging the Appeals Council's conclusion that Dr. Reitman's opinion did not relate to the adjudicated period. In other words, she is challenging the Appeals Council's alleged legal error in rejecting Dr. Reitman's opinion, not the substance of the Appeals Council's decision. *See, e.g., Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) ("When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is also subject to judicial review because it amounts to an error of law."). Therefore, the Court has jurisdiction to review the Appeals Council's decision for limited purpose of testing whether Dr. Reitman's opinion is new, material, and related to the adjudicated period.

After carefully reviewing Dr. Reitman's opinion, the Court finds the Appeals Council appropriately disregarded it on the basis that it was not new, material, or relating to the adjudicated period. "To be 'new,' evidence must be more than merely cumulative of other evidence in the record." *Bergmann*, 207 F.3d at 1069. To be "material," the evidence must be relevant to claimant's functioning during the adjudicated period, and must not "merely detail after-acquired conditions or post-decision deterioration of a pre-existing condition." *Id.* That said, the fact that an opinion was rendered after the adjudicated period does not *per se* disprove its relevancy, because such evidence may relate to a claimant's impairments during the adjudicated period. *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005).

11

Here, the adjudicated period spans from October 5, 2010 through December 7, 2015. (R. 23.) Dr. Reitman authored his opinion on May 16, 2016, more than five months after the adjudicated period had ended. Dr. Reitman gathered data to inform his opinion in two different ways. First, he reviewed the psychological evaluations in the record, *i.e.* the same evaluations that were before the ALJ. Second, he interviewed Stimpson and administered two tests to assess her cognitive abilities. But neither exercise led to an opinion about Stimpson's condition that was new, material, and related to the adjudicated period. Nearly half of the records Dr. Reitman consulted as part of the medical records review dated back almost a decade before the alleged onset date. Of the records that were created within the adjudicated period, Dr. Reitman merely reiterated their findings and conclusions and did not offer his own impressions regarding what they meant for her condition during the adjudicated period. Thus, Dr. Reitman's review of the records does not constitute "new" evidence. Further, Dr. Reitman's analysis derived through his examination and testing of Stimpson, while new, does not provide information about Stimpson's condition during the adjudicated period. Dr. Reitman saw Simpson on only one occasion, and the tests he administered offered only snapshots of Stimpson's condition five months after the adjudicated period had ended. In fact, his report highlights the changing nature of her condition by noting that the test results demonstrate cognitive decline and that her condition has worsened. (R. 14.) Nothing in his opinion purports to relate his assessment of her condition at the time of his examination to the adjudicated period. Accordingly, the Court finds that the Appeals Council correctly concluded that Dr. Reitman's opinion did not relate to Stimpson's

functioning during the adjudicated period and therefore is not relevant to the disability determination.

### C. Whether the ALJ's Decision is Supported by Substantial Evidence

Stimpson's sole argument is that the Appeals Council's alleged error in rejecting Dr. Reitman's opinion requires remand. In connection with that argument, however, Stimpson generally "dispute[s] the Commissioner's findings at the third and fifth step[s] of the sequential evaluation." (Pl.'s Mem. Supp. Summ. J. at 8.) She further avers, without explanation, that because Dr. Reitman's opinion was not taken into account by the Commissioner, it is impossible to determine if substantial evidence supports the denial of benefits. (*Id.* at 10-11.) Although her arguments are framed as a challenge to the Appeals Council decision to deny review, the Court will nevertheless consider Stimpson's arguments against the underlying ALJ decision to deny her benefits claims.

As an initial matter, the Court notes that Stimpson provides little by way of argument to support her assertion that the Commissioner's decision is not supported by substantial evidence. To prevail in a Social Security appeal, the plaintiff must support its arguments with citations to the relevant law and facts in the case. *Hill v. Berryhill*, No. 16-CV-02465-KMM, 2017 WL 4586774, at *3 (D. Minn. June 8, 2017) (citing *Aulston v. Astrue*, 277 F. App'x 663, 664 (8th Cir. 2008); *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005); *Ollila v. Astrue*, No. 09–cv–3394–JNE–AJB, 2011 WL 589037, at *11 (D. Minn. Jan. 13, 2011), *R. & R. adopted*, No. 09–cv–3394–JNE–AJB, 2011 WL 589588 (D. Minn. Feb. 10, 2011). Here, at no point does Stimpson challenge the ALJ's

specific findings, the reliability of the evidence he used to arrive at his decision, or the legal basis for his decision. Stimpson does not even indicate which listed mental impairment she thinks she qualifies for or what error was made at step five—whether it be relying on an inaccurate RFC, posing an inaccurate hypothetical to the vocational expert, misinterpreting the testimony of the vocational expert, or otherwise. In other words, Stimpson makes no effort to scrutinize the large body of evidence the ALJ cited in support of his determinations at steps three and five, or to explain how or why adding Dr. Reitman's opinion to the body of evidence would negate the substantial evidentiary support for those determinations. Among the evidence considered and cited by the ALJ was Dr. Carlson's report, which is of the same type as Dr. Reitman's report but more thoroughly supported with testing beyond that done by Dr. Reitman. (R. 935-41.) Therefore, because Stimpson failed to provide any citations to case law or the record in support of her very brief conclusory argument that the Commissioner erred at steps three and five, the Court cannot find that Stimpson established the ALJ's opinion is unsupported by substantial evidence on the record as a whole.

Further, even if the Court looks past Stimpson's failure to develop her arguments, the Court nonetheless finds that substantial evidence supports the ALJ's conclusions at steps three and five. Turning first to whether there was substantial evidence that Stimpson's impairments do not meet or equal a listed impairment, "[t]he burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing." *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). The ALJ must consider all evidence in the record to determine whether the claimant has an impairment listed in

14

Appendix 1 to Subpart P of Part 404 of the regulations, or a combination of impairments that are medically equivalent to a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). To meet the criteria for a listed mental impairment, a claimant's symptoms must meet two of the four following "paragraph B" criteria: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. 404, subpt. P, app. 1, § 12.00(A)(2)(b). Here, the ALJ determined Stimpson's impairments do not meet or equal any of the listed impairments, and gave particular attention to listings 12.02 (neurocognitive disorders), 12.04 (depression), 12.06 (anxiety), and 12.09 (substance addiction).[3] (R. 27-31.) In doing so, the ALJ found that Stimpson met none of the four "paragraph B" criteria for a listed mental impairment—Stimpson has only one recorded episode of decompensation and has suffered only moderate restrictions in daily living, social functioning, and concentration, persistence, or pace. Further, the ALJ supported his decision by citing the testimony of impartial medical expert Dr. Karen Butler (R. 80-86), two Adult Function Reports completed by disability advocate Stephanie Larson (R. 356-67, 375-88), a diagnostic assessment prepared by Kerri

---

[3] The ALJ also considered whether Stimpson suffered from the following physical impairments at or equal to the listing level: 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 5.05 (chronic liver disease), 7.02 (anemia), and 11.18 (traumatic brain injury). (R. 27-29.) Because Stimpson argues that Dr. Reitman's psychological opinion should have been evaluated by the Commissioner, and that opinion only relates to mental impairments, the Court will only consider the possibility of a listed mental impairment when assessing whether substantial evidence supports the ALJ's decision at step three.

Burgett, M.S., LP (R. 1244-28), progress notes taken by Jennifer Smith, M.S. (R. 1358-61), results from a cognitive test performed by Dr. Carlson (R. 933-41), a psychological examination report prepared by Megan Septer, Psy.D. (R. 1110-18), and a psychological consultation report prepared by Donald Wiger, Ph.D. (R. 929-32). Additionally, the ALJ highlighted specific portions of the record which demonstrated that Stimpson suffered from only mild to moderate mental limitations. The ALJ then determined Stimpson did not meet the criteria for any of the listed impairments. Based on the ample support supplied by the ALJ to justify his conclusion that Stimpson did not suffer from a listed impairment, the Court finds the ALJ's decision at step three to be supported by substantial evidence.

The Court also finds that substantial evidence supports the ALJ's conclusion that Stimpson has the RFC to successfully transition into new work. "[T]he issue at step five is whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience." *Harris v. Barnhart*, 356 F.3d 926, 929 (8th Cir. 2004). To make such a determination, the ALJ typically relies on a "vocational expert's response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers." *Guilliams v. Barnhart*, 393 F.3d 798, 803–04 (8th Cir. 2005). Here, in assessing whether Stimpson is able to successfully transition into a new position, the ALJ conducted a rigorous review of the record and comprehensively evaluated Stimpson's medical files. Among other medical records, the ALJ consulted the history and physical examination form authored by certified registered nurse practitioner Mary Lou Hanson (R. 847-48), the

psychological consultation performed by Dr. Wiger (R. 929-32), the discharge summary and after-care plan prepared by the Vinland National Drug and Alcohol Treatment Center (R. 942-72), the cognitive evaluation performed by Dr. Carlson (R. 935-41.), the treatment and diagnostic notes prepared by Ann Kookler, M.D., and other medical professionals at the Nystrom & Associates mental health clinic (R. 1052-1109, 1238-1248, 1378-1439), and the psychological interpretive report prepared by Dr. Septer (R. 1110-18).

Based on these records, the ALJ determined that Stimpson's mental impairments limited her to light, unskilled work subject to a number of additional limitations. (R. 35.) Although Stimpson complained of significant mental deficits, the ALJ found that the "empirical testing and mental status examinations do not support her allegations to the degree stated" and that the psychological evaluations "have been recorded without listing significant abnormalities." (R. 38.) The ALJ also posed hypotheticals to the impartial vocational expert, David Russel, in line with the RFC he ultimately assessed in the decision. (R. 87-94.) Mr. Russel opined that a person with the stated abilities and limitations could successfully transition into work as a hand packager, cleaner, and produce sorter. (R. 43, 91.) In light of that testimony, the ALJ determined Stimpson was not disabled because she was capable of working. The Court finds that the ALJ supplied a thorough rationale for concluding at step five that Stimpson is able to successfully transition into employment based on her RFC, and concludes that the ALJ's decision at step five is supported by substantial evidence.

## V. Conclusion

In sum, the Court finds the ALJ's decision to be supported by substantial evidence. As detailed above, the Appeals Council correctly concluded that Dr. Reitman's opinion was not relevant to Stimpson's condition during the adjudicated period, and thus properly rejected it. Further, Stimpson did not offer a sufficient basis to reverse and remand the ALJ's decision based on alleged inadequacies at steps three or five. Instead, Stimpson offered conclusory assertions that the ALJ decision is not supported by substantial evidence, but did not say how or why, and the Court's own review of the evidence of record finds substantial evidence in support of the decision.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Sheryl Lynn Stimpson's Motion for Summary Judgment [Doc. No. 17] is **DENIED**;

2. Nancy A. Berryhill's Motion for Summary Judgment [Doc. No. 19] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: March 22, 2018     s/ *Hildy Bowbeer*
                          HILDY BOWBEER
                          United States Magistrate Judge